IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUSTIN TRONCOSO, individually and for
others similarly situated,

        Plaintiffs,

v.   No. 1:23-cv-00125-KWR-JFR

ENTERPRISE PRODUCTS OPERATING
LLC,

        Defendant.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

THIS MATTER comes before the Court upon Plaintiff Justin Troncoso's motion for class certification filed on June 24, 2024. Doc. 37. Having reviewed the parties' briefs and applicable law, the Court finds that Plaintiff's motion is not well taken, and therefore, is **DENIED**. Defendant Enterprise Products Operating LLC's motion to strike, Doc. 46, is **DENIED** as moot.

### BACKGROUND

Plaintiff Justin Troncoso worked as a "Gathering Technician" ("GT") for Defendant Enterprise Products Operating LLC in New Mexico from February 2020 to March 2022. Ex. 6 (Troncoso Interrogatory). Plaintiff seeks to certify a damages class consisting of "[a]ll current and former Enterprise Gathering Technicians who worked in New Mexico from February 10, 2020[,] through the present." Doc. 38 at 2. The proposed class members are subject to the same company timekeeping policies, requirements, and restrictions, *See* Ex. 3, 45:3–48:1, 53:19–54:11, 127:2–128:5, 135:3–135:15, 151:8–151:18; Ex. 5, 12:16–14:1; Ex. 7, 13:24–14:14, 16:19–17:10; Ex. 9, but are assigned various supervisors and managers, *see* Ex. 3, 28:2–32:23.

GTs are responsible for operating and maintaining pipeline gathering systems. Ex. 2 at 2–3. They are scheduled to work either five eight-hour days per week or four ten-hour days per week. Ex. 3, 45:3–48:1. These rotations are scheduled for an extra half-hour in length—either 8.5 or 10.5 hours—to cover mandatory unpaid lunch breaks. Ex. 3, 46:16–46:25. Defendant's safety policy requires GTs to remain "alert" while performing tasks such as "tie-ins" and "running pigs." *See* Ex. 5, 12:16–14:1; Ex. 7, 16:19–17:10. These tasks can take anywhere from a few hours to a full day to complete. Ex. 5, 18:15–21:24. Due to the nature of the job, Plaintiff argues, GTs work over lunch every day. Doc. 38 at 2.

Plaintiff argues that the policy to automatically deduct 30 minutes a day for a mandatory lunch break deprives GTs of overtime wages, and therefore, violates the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-22(D) (West) ("MWA"). Doc. 1 at 1–7. Specifically, Plaintiff alleges a pattern, practice, or policy discouraging or prohibiting employees from reporting overtime wages. Doc. 1 at 7.

Defendant does not have any written policy that specifically prompts employees to report time worked during mandatory lunch breaks and its time-keeping policy does not have a specific category for time worked over this break. Ex. 3, 85:3–87:3, 125:22–126:22. Plaintiff also testifies that his supervisor, Myles Moore, rejected his timecard when he did not deduct the 30-minutes for lunch. Ex. 6. Defendant, however, has a policy that employees report all hours worked, including any missed breaks. Doc. 48 at 9; Doc. 48-5 at 7 (Enterprise Pay Practices) ("It is critical that all hours worked in a workweek be reported, as worked, within that workweek."); Ex. 3, 80:12–85:20. The record indicates that at least some GTs reported time worked over lunch breaks. *See* Doc. 48-7.

Plaintiff seeks damages exceeding $5,000,000.00 under N.M. Stat. Ann. § 50-4-26(C), (E). This includes 30-minutes of unpaid wages for every day each class member worked, Doc. 53-2, in addition to treble damages and attorneys' fees. Doc. 62 at 2–3.

Defendant moved to strike evidence regarding Plaintiff Troncoso's deposition testimony. Doc. 46. It argued that the Federal Rules of Evidence apply to motions for class certification, and that segments of his testimony are inadmissible hearsay. Doc. 46 at 1–2. Assuming that the statements at issue can be considered by the Court (either because the Federal Rules of Evidence do not apply to this motion, or because the statements are not hearsay, admissible non-hearsay, or falls under a hearsay exception), class certification still fails. The Court, therefore, determines that ruling on the substantive legal question raised is unnecessary.

## DISCUSSION

The Court must first decide whether it has subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The Court concludes that it does. The Court then must decide whether to certify Plaintiff's proposed damages class under Federal Rule of Civil Procedure 23. The Court concludes that certification is improper because Plaintiff has not established predominance or superiority. Fed. R. Civ. P. 23(b)(3). Accordingly, Plaintiff's motion for class certification must be denied.

### I.   Subject Matter Jurisdiction

A federal court has an affirmative duty to ensure subject matter jurisdiction is established. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998); *Firstenberg v. City of Sante Fe, N.M.*, 696 F.3d 1018, 1022–23 (10th Cir. 2012) ("Federal subject matter jurisdiction is elemental. It cannot be consented to or waived, and its presence must be established in every cause under review in the federal courts."). The Court issued an order to show cause to shore up concerns

about subject matter jurisdiction. Doc. 59. Plaintiff filed a timely response. Doc. 62. The Court finds that it has subject matter jurisdiction over this case.

Plaintiff asserts subject matter jurisdiction under 28 U.S.C. § 1332(d). Doc. 1 at 2. The Court must find that CAFA's jurisdictional requirements are met to enter a class certification order. 28 U.S.C. § 1332(d)(8) ("This subsection shall apply to any class action before or after the entry of a class certification order by the court . . . ."). "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)).

The Court finds that Plaintiff's proposed class, comprised of GTs who worked for Defendant in New Mexico from February 10, 2020, to present, exceeds 100 members. *See* Doc. 62 at 2; Doc. 53-2 (Damage Model showing 109 Class Members). Defendant does not dispute this finding. *See* Doc. 66.

The Court finds that the parties are minimally diverse. Under CAFA, the citizenship of an "unincorporated association" is "the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237 n.1 (10th Cir. 2015). Defendant Enterprise Products Operating LLC was organized under the laws of, and has its principal place of business in, Texas. Doc. 66 at 2. At least 1 class member is domiciled outside of Texas. *See* Doc. 1 at 2.

The Court finds that the amount in controversy requirement, $5,000,000.01, is met. Class member claims, which include "persons (named or unnamed) who fall within the definition of the

proposed or certified class," are aggregated to determine whether the amount in controversy requirement is met. *See* 28 U.S.C. § 1332(d)(1)(D), (d)(6).

An employer who violates N.M. Stat. Ann. § 50-4-22 (West) is "liable to the employees affected in the amount of their unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages." N.M. Stat. Ann. § 50-4-26(C) (West). A defendant is also liable to pay "reasonable attorneys fees" if it violates § 50-4-22(D). N.M. Stat. Ann. § 50-4-26(E) (West).

Though unclear from Plaintiff's complaint, Doc. 1, he now asserts that the number of unpaid wages is approximately $1,700,000. Doc. 62 at 2; Doc. 53-2. Plaintiff reached this amount by multiplying the total number of days worked and the number of unpaid wages for each day (.5 hours) for each member included in the model (109 GTs total). Doc. 62 at 2–3. Plaintiff then adds approximately $3,400,000 in treble damages to reach a total of approximately $5,100,000. *See* Doc. 62 at 3. Plaintiff argues that, if considering 18 additional GTs not included in the damages model and attorneys' fees, the amount in controversy requirement is plainly met. Doc. 62 at 3.

The amount in controversy requirement requires "a party seeking federal jurisdiction to show only . . . that 'a fact finder *might* legally conclude' that damages exceed the statutory amount." *Hammond v. Stamps.com, Inc.*, 844 F.3d 909, 911–12 (10th Cir. 2016) (emphasis original). "[T]o justify dismissal under this standard 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Id.* (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). While Plaintiff's damages calculation may be ill-founded, *see* Doc. 66 at 3–4, it is possible for a fact finder to legally conclude that the damages in this case exceed $5,000,000.

Accordingly, the Court finds that it has subject matter jurisdiction under 28 U.S.C. § 1332(d).[1]

## II.     Legal Standard

Class certification is governed by Federal Rule of Civil Procedure 23. The party seeking certification must first demonstrate that:

> "(1) the class is so numerous that joinder of all members is impracticable [numerosity];
> "(2) there are questions of law or fact common to the class [commonality];
> "(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality]; and
> "(4) the representative parties will fairly and adequately protect the interests of the class [adequate representation]."

Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Second, a party seeking to certify a damages class must show that "questions of law or fact common to class members predominate over any questions affecting only individual members [predominance], and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]." Fed. R. Civ. P. 23(b)(3).

"A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23]—that is, he must be prepared to prove that [the requirements] are *in fact* [satisfied]." *Dukes*, 564 U.S. at 350 (emphasis original); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33

---

[1] The Court continues to have subject matter jurisdiction over Plaintiff Troncoso's individual claim even after denying class certification. *See Coba v. Ford Motor Co.*, 932 F.3d 114, 118–19 (3d Cir. 2019) ("If a federal court properly exercises jurisdiction pursuant to § 1332(d) at the time a claim is filed . . . does a subsequent denial of class certification divest the court of subject-matter jurisdiction? . . . we conclude that it does not."); *F5 Cap. v. Pappas*, 856 F.3d 61, 76–77 (2d Cir. 2017) ("Because jurisdictional facts are assessed at the time of removal . . . the fact that the court subsequently determined that the case could not proceed as a class action under CAFA did not deprive it of subject matter jurisdiction."); *Metz v. Unizan Bank*, 649 F.3d 492, 500–01 (6th Cir. 2011) ("The general rule is that 'if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.'" (citing *Freeport-McMoRan, Inc. v. KN Energy, Inc.*, 498 U.S. 426, 428 (1991))).

(2013). This requires courts to conduct a "rigorous analysis" that may "entail some overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 350–51. However, "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1174 (10th Cir. 2023) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)) (cleaned up).

### III. Analysis

    A. <u>The Minimum Wage Act requires plaintiffs to show that they were required to work more than 40 hours per week without having been paid overtime</u>.

Plaintiff alleges that Defendant's policies and practices violate his and other proposed class members' right to overtime wages under N.M. Stat. Ann § 50-4-22(D). Doc. 38 at 6, 11.

A court must "carefully examine what facts are required to prove [the plaintiff's] claims and then determine whether [the plaintiff has] shown that they could establish those facts through common evidence." *Brayman v. KeyPoint Gov't Sols., Inc.*, 83 F.4th 823, 839 (10th Cir. 2023); *see also generally Naylor Farms, Inc. v. Chaparral Energy, LLC*, 923 F.3d 779, 785 (10th Cir. 2019) ("[W]e begin our discussion with an overview of [the substantive state] law."). The MWA mandates that "[a]n employee shall not be required to work more than forty hours in any week, . . . unless the employee is paid one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours." N.M. Stat. Ann. § 50-4-22(D) (West).

Plaintiffs must first provide facts showing that they were "required" to work more than 40 hours per week. *See* N.M. Stat. Ann. § 50-4-22(D) (West). "[E]mployees covered by the MWA may be 'required to work' more than 40 hours per week even when their employers do not overtly demand such work." *New Mexico Dep't of Lab. v. A.C. Elec., Inc.*, 965 P.2d 363, 366 (N.M. Ct. App. 1998) ("Because employers generally occupy a position of authority over their employees,

any subtle pressure to work over 40 hours per week may be understood by those employees as 'requiring' overtime.").

Once a plaintiff shows that he was required to work more than 40 hours a week, he must then demonstrate that overtime was not in fact paid. *See* N.M. Stat. Ann. § 50-4-22(D) (West). "[A]n automatic meal break deduction is not, in and of itself, unlawful." *Sloane v. Rehoboth McKinley Christian Health Care Servs. Inc.*, 423 P.3d 18, 23 (N.M. Ct. App. 2018). An employer violates the MWA, however, when it "[fails] to compensate employees who work through . . . unpaid meal breaks" or "[fails] to police and oversee hourly workers and their supervisors to ensure that [employees are compensated] when working through or during unpaid meal breaks." *See id*. This includes when employees are "sometimes required to work through meal breaks, but not compensated for such work" because a "single policy or plan [exists] to not only schedule workers in such a way that missing meal periods was sometimes unavoidable, but also to discourage employees from [entering time worked during a mandatory meal break]." *See id.* at 23–24.

B. <u>Rule 23(a)'s requirements—numerosity, commonality, typicality, and adequate representation—are satisfied</u>.

The Court finds that Plaintiff sufficiently demonstrated Federal Rule of Civil Procedure 23(a)'s requirements.

1. *Numerosity*

Plaintiff's proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Tenth Circuit has "no set formula to determine if the class is so numerous that is should be so certified." *Trevizo v. Adams*, 455 F.3d 1155, 1162 (10th Cir. 2006) (citation and internal quotations omitted).

Plaintiff's proposed class, now comprised entirely of GTs, exceeds 100 members. *See* Doc. 62. Defendant does not contest this figure. *See generally Black*, 69 F.4th at 1174 ("The district

court 'must generally accept the substantive, non-conclusory allegations of the complaint as true.'" (citing *Vallario v. Vandehey*, 554 F.3d 1259, 1265 (10th Cir. 2009)). A class this size typically satisfies the numerosity requirement. *See Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) ("[T]he difficulty in joining as few as 40 class members should raise a presumption that joinder is impracticable."); *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999); *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 859–860 (7th Cir. 2017). It also satisfies CAFA's jurisdictional requirement, *see Knowles*, 568 U.S. at 592, which further indicates that this proposed class size is sufficiently numerous.

Here, many individual claims are relatively small and class members may find that litigation costs outweigh any potential benefit, and therefore, decide not to bring suit at all. *See 1 Newberg and Rubenstein on Class Actions* § 3:11 (6th ed.) ("Rule 23 enables litigation where it might otherwise not occur because of the impracticability of individuals joining together to pool their resources.") [hereinafter *1 Newberg*]. Even if individual claimants decided to sue, it is unlikely that all suits would be filed in the same court because the proposed class members are located across New Mexico. Accordingly, the Court finds that the proposed class is sufficiently numerous and that joinder is impracticable.

### 2. *Commonality*

Plaintiff must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). At a minimum, Plaintiff must show that class members "have suffered the same injury." *Dukes*, 564 U.S. at 349–350 (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982)) (internal quotations omitted). It is not enough, however, that

class members are claiming that "they have all suffered a violation of the same provision of law." *Id.* at 350.

Rather, their claims "must depend upon a common contention" that is "of such a nature that it is capable of class-wide resolution," meaning that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "In other words, the focus of [the] commonality requirement is not so much on whether there exist common *questions*, but rather on 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Naylor Farms*, 923 F.3d at 789 (citing *Dukes*, 564 U.S. at 350) (emphasis original); *see also* 1 Newberg, *supra*, § 3:19 ("[T]he key question is whether classwide litigation will generate singular answers, not just address singular questions."). Still, only one common question of law or fact is needed to satisfy this requirement. *See Sherman v. Trinity Teen Sols., Inc.*, 84 F.4th 1182, 1192 (10th Cir. 2023) (citing *Menocal v. GEO Group, Inc.*, 882 F.3d 905, 914 (10th Cir. 2018)).

To establish a MWA violation, a plaintiff must first demonstrate that they were "*required* to work more than forty hours in *any week* of seven days . . . ." N.M. Stat. Ann. § 50-4-22(D) (West) (emphasis added). Unlike the FLSA, it is not enough for a plaintiff to show that they were "simply *permitted* to work . . . over 40 hours per week." *See A.C. Elec.*, 965 P2d at 366 (emphasis added). Whether the policies in question sometimes "required" Plaintiff and other GTs to work over lunch—and thereby exceed 40 hours in any given week—is a question common to the class. *See Tyson Foods,* 577 U.S. at 453.

All proposed class members share the same title, job duties, and are held to the same company policies, including being required to take an unpaid meal break and follow safety policies. *See* Ex. 3, 45:3–48:1, 53:19–54:11, 127:2–128:5, 135:3–135:15, 151:8–151:18; Ex. 5,

12:16–14:1; Ex. 7, 13:24–14:14, 16:19–17:10; Ex. 9. Plaintiff argues that these policies, taken together, in fact required Plaintiff and other proposed class members to work through their mandatory lunch breaks and exceed 40 hours per week without additional compensation. *See* Doc. 53 at 1 ("Whether Enterprise's meal period deduction policy and the nature and expectations of the Gathering Technician job requires Troncoso and the New Mexico Class Members to perform work without compensation each day."). This reliance on *explicit*, written companywide policies to establish an element of a claim is distinguishable from *Dukes*, which found commonality lacking because the movants did not provide sufficient proof of an *implicit* companywide policy to discriminate. *See* 564 U.S. at 355, 359.

Common, class-wide evidence is likely sufficient to in fact prove that company policies sometimes required GTs to work through their mandatory lunch breaks, and therefore, to exceed 40 hours in a week. GTs have work schedules consisting of either five eight-hour days per week or four ten-hour days per week. Ex. 3, 45:3–48:1. These rotations are scheduled for an extra half-hour in length—either 8.5 or 10.5 hours—to cover mandatory lunch breaks. Ex. 3, 46:16–46:25. Defendant's safety policy requires GTs to remain "alert" while performing tasks such as "tie-ins" and "running pigs." *See* Ex. 5, 12:16–14:1; Ex. 7, 16:19–17:10.[2] These tasks can take anywhere from a few hours to a full day to complete. Ex. 5, 18:15–21:24. It follows, therefore, that if a task such as "running pigs" were to take a full day, the GT would have been required to work over 40 hours in a week. Whether the company had an unwritten company-wide practice of disallowing or discouraging GTs to report time worked over lunch breaks as overtime, while potentially relevant

---

[2] The MWA, unlike the FLSA, does not contain a provision requiring that employees be "completely relieved from duty" during a bona fide meal period. *See* 29 CFR § 785.19. The Court will nonetheless assume that remaining alert counts as working. *See generally A.C. Elec.*, 965 P.2d at 366 ("[A] statute with a remedial purpose must be liberally construed to implement its purpose . . . .").

to the MWA inquiry, is irrelevant to the distinct question of whether its policies sometimes required employees to work over lunch. *See* Doc. 48 at 9.

The Court finds that Plaintiff has demonstrated that at least one question of law or fact is common to the class, and that handling the common question on a class-wide basis can generate at least one common answer that will drive the resolution of this litigation. *See Naylor Farms*, 923 F.3d at 789; *Dukes*, 564 U.S. at 350.

### 3. *Typicality*

Plaintiff Troncoso, the named class representative, must demonstrate that his "claims or defenses . . . are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality does not require that every member of the class share a fact situation identical to that of the named plaintiff." *Sherman*, 84 F.4th at 1193 (citing *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1216 (10th Cir. 2014)) (cleaned up). Instead, it "requires only that the claims of the class representative and class members are based on the same legal or remedial theory." *Id.* (citing *Monocal*, 882 F.3d at 924) (internal quotations omitted).

Here, Troncoso shares the same position and workplace obligations as the other proposed class members. *See* Ex. 3, 45:3–48:1, 53:19–54:11, 127:2–128:5, 135:3–135:15, 151:8–151:18; Ex. 5, 12:16–14:1; Ex. 7, 13:24–14:14, 16:19–17:10; Ex. 9. All class members' claims reflect the same theory: that company-wide policies may require GTs to work over mandatory lunch breaks, and therefore, to exceed 40 hours in a week; and by not having an express policy to report time worked over lunch and otherwise discouraging or disallowing reporting this time worked, Defendant is causing Plaintiff and proposed class members to be deprived of overtime wages required by the MWA. *See* Doc. 53 at 1–6.

The fact that circumstances regarding the non-reporting of overtime worked may differ from person-to-person (for example, one class member being pressured not to report time worked while another member has his time submissions continually rejected) does not defeat typicality because the broad legal theory—that company management discouraged or disallowed reporting actual time worked during mandatory lunch breaks—remains constant. *See Sherman*, 84 F.4th at 1193–94.

Accordingly, the Court finds that the named class representative has claims typical of absent the class members' claims.

4. *Adequate Representation*

Plaintiff must demonstrate that "the representative parties," including both the class representative and class counsel, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Falcon*, 457 U.S. at 157–58 n.13). The inquiry also serves to ensure that class counsel can competently represent the class. *See Falcon*, 457 U.S. at 157–58 n.13.

To determine whether this requirement is met, the Court must ask whether "the named plaintiffs and their counsel have any conflicts of interests with other class members" and whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf the class." *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citations and internal quotations omitted); *see also Amchem*, 521 U.S. at 625–26 ("A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." (citations and internal quotations omitted)).

The Court finds that Plaintiff Troncoso (the class representative) and class counsel will fairly and adequately protect absent class members' interests. Defendant raises no argument to the contrary. Class representative and counsel stated that there are no conflicts of interest. Doc. 38 at 19–20. There is no indication that Troncoso's strategic or financial interests would diverge from or undercut absent class members' interests. Counsel appears to be qualified and otherwise able to meet the requirements listed in Federal Rule of Civil Procedure 23(g). Doc. 38 at 20–21.

C. <u>Plaintiff is unable to demonstrate, however, that common issues predominate over individual issues and that the class action is superior to alternative forms of adjudication</u>.

To certify a damages class, "the questions of law or fact common to class members [must] predominate over any questions affecting on individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff cannot meet this requirement, and therefore, the proposed class cannot be certified. *See generally Naylor Farms*, 923 F.3d at 789 ("[The] predominance requirement is related to, albeit 'more demanding than,' [the] commonality requirement." (citing *Behrend*, 569 U.S. at 34)).

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "It is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." *CGC Holding Co. v. Broad and Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) (citing *Amgen*, 568 U.S. at 469). It is necessary, however, that "the common, aggregation-enabling, issues in the case are more prevalent or important than the noncommon, aggregation-defeating, individual issues.'" *Black*, 69 F.4th at 1175 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). "An individual question is one where

[proposed class members] will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Tyson Foods,* 577 U.S. at 453 (citation and internal quotations omitted).

Predominance involves two-steps: "First, for every issue related to the claim, the court must characterize it as common or individual"; second, the "court must then weigh the issues to determine whether the common issues predominate." *Brayman*, 83 F.4th at 838. Here, individual issues clearly outweigh common issues.

1. *Individual issues are more prevalent or important than common issues.*

Individual issues are more prevalent or important than the common issues in this case, and therefore, the predominance requirement is not met. As discussed *supra* section III.B.2, the first issue—whether company policies may "require" GTs to work more than 40 hours in a week—is an issue "susceptible to generalized, class-wide proof." *See Tyson Foods*, 577 U.S. at 453. The remaining issues, however, involve evidence that "varies from member to member." *See id*.

Once plaintiffs establish that they are required to work more than 40 hours in a week, they must then show that overtime in fact went unpaid. *See* N.M. Stat. Ann. § 50-4-22(D) (West). Plaintiff does not argue that Defendant failed to pay overtime wages for recorded work. Rather, he argues that Defendant has an implicit company-wide policy to avoid GTs from reporting time worked over mandatory meal breaks as overtime. *See* Doc. 53 at 3–4; *see also Sloane*, 423 P.3d at 23–24. Plaintiff argues that this can be established using generalized, class-wide proof. Doc. 53 at 9. The Court finds, however, that it is unlikely the class-wide evidence asserted "will suffice for each member to make a prima facie showing" and will instead require proposed class members "to present evidence that varies from member to member." *See Tyson Foods,* 577 U.S. at 453.

Plaintiff principally argues that Defendant not having an express policy instructing GTs to report time worked or relieving a worker of all duties during the mandatory lunch period, together with the fact that so few overtime submissions of this kind were made, suffices to show an implicit company-wide policy—a "policy not to have a policy"— that discourages GTs from reporting overtime. Doc. 53 at 3–5; Ex. 3, 85:3–87:3, 125:22–126:22. The record indicates, however, that at least some GTs reported time worked over lunch breaks. *See* Doc. 48-7. Defendant also notes that it has a policy to report all hours worked, including any missed breaks. Doc. 48 at 9; Doc. 48-5 at 7 (Enterprise Pay Practices) ("It is critical that all hours worked in a workweek be reported, as worked, within that workweek."); Ex. 3, 80:12–85:20. While these facts fall short of exonerating Defendant, it certainly makes it unclear whether such an implicit company-wide policy in fact exists at the corporate level and that these incidents of unpaid overtime are not instead attributable to the isolated failures of a few individual supervisors.

To establish an MWA violation occurred, Plaintiff would likely need to provide evidence that a common practice existed among company supervisors or managers to discourage or prohibit GTs from reporting time worked over mandatory lunch breaks or were otherwise actively disregarding company policy. *See* Ex. 3, 80:12–85:20. If such a widespread practice in fact existed, a factfinder could reasonably conclude that Defendant had failed to "police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks, they [were] being compensated." *See Sloane*, 423 P.3d at 23–24.

The Court, however, will not impute the anecdotal experiences of a few to the entire class. *See Dukes*, 564 U.S. at 356–57 ("One named plaintiff's experience of discrimination is insufficient to infer that discriminatory treatment is typical of the employer's employment practices." (citing *Falcon*, 457 U.S. at 158) (cleaned up)). While it is true that all proposed class members share the

same job title, duties, and are subject to the same policies, *see* Doc. 53 at 8, the class members also have substantial differences, including being under the supervision of different supervisors responsible for approving timesheets and overseeing day-to-day operations. *See* Ex. 3, 28:2–32:23. Plaintiff, therefore, cannot rely on the testimony from select individuals to establish a uniform practice. *See* Doc. 53 at 3–6.

To establish an implicit company-wide policy, and to circumvent the need for this individual evidence, Plaintiff could use "expert testimony, statistical data, or representative evidence." *See Brayman*, 83 F.4th at 839–40 (citing *Tyson Foods*, 577 U.S. at 450). But Plaintiff does not bring forth any such evidence.

Plaintiff's limited use of statistics is insufficient to establish an illegal companywide policy. Plaintiff notes that there are only a few instances of an employee submitting an overtime request related to working through lunch out of over 100 thousand possible entries to demonstrate that a companywide policy to not pay overtime existed. Doc. 53 at 9. Yet Plaintiff's reliance on this figure assumes that employees were consistently working, but not reporting, overtime during lunch. More generally, it is unclear why including every time entry is relevant, and Plaintiff does not propose a methodology to justify the use of, and conclusions from, these figures. In short, the Court cannot infer that Defendant had an implicit policy to avoid paying overtime for time worked during lunch breaks from these basic statistics. *See Tyson Foods*, 577 U.S. at 457–58.

Without a company-wide policy being established from the available evidence, individual class members are left with showing that their supervisor's action (or inaction) discouraged or prohibited reporting overtime worked during the mandatory lunch break. This distinct factual issue, which may vary from member to member and requires eliciting testimony from numerous supervisors and managers, would dominate issues susceptible to class-wide proof.

Likewise, determining the number of unpaid wages—an issue that goes to both liability and damages, *see* N.M. Stat. Ann. §§ 50-4-22(D), 50-4-26(C) (West)—requires substantial individual evidence that varies among members. *See Tyson Foods*, 577 U.S. at 453. Plaintiff argues that common pay and time records are sufficient to prove the amount of unpaid overtime wages. Doc. 53 at 9. Plaintiff assumes, however, that all members in the proposed class worked through their mandatory lunch break each scheduled day because company policy required them to be always alert. *See* Doc. 53 at 9. But such an assumption does not appear to be supported by the record. While true that company policy requires GTs to remain alert while conducting all tasks, Ex. 5, 11:6–14:1, the record does not establish that tasks always run for the entire day and thereby always prevent GTs from taking a lunch break. *See, e.g.*, Ex. 5, 60:1–60:8 ("Q: And did the gathering technicians have to work through their lunch during their days for the long-scheduled pigging? A: [Y]es, *sometimes* they would have to work through that period." (emphasis added)); Doc. 48-6 at 1–2.

It follows that, to establish liability and damages, each proposed class member would have to demonstrate which meal breaks were missed, for how long, and whether it was in fact unpaid. Plaintiff did not provide expert testimony or statistical data to ease this task on a class-wide basis, *see Brayman*, 83 F.4th at 839, and the limited testimony relied upon by Plaintiff lacks the reliability to be considered as representative evidence, *see Tyson Foods*, 577 U.S. at 455, 459 ("Representative evidence that is statistically inadequate or based on implausible assumptions could not lead to a fair or accurate estimate of the uncompensated hours an employee has worked."). Absent such evidence, a court would have to procure testimony from each class member to ascertain the number of underpaid wages. *See* N.M. Stat. Ann. § 50-4-26(C) (West).

The Court's analysis remains the same even if the number of unpaid overtime wages is treated strictly as a damages issue. While a class action can proceed "even if damages can only be calculated on an individual basis," *see Brayman*, 83 F.4th at 839–40, in this case, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class," *see Behrend*, 569 U.S. at 34.

> 2. *A class action is inferior to other available methods for fairly and efficiently adjudicating this case.*

As established above, questions of law or fact common to class members are predominated by questions affecting only individual members. *See* Fed. R. Civ. P. 23(b)(3). The Court also finds that allowing this case to proceed as a class action is inferior to other available methods for fairly and efficiently adjudicating the claims in this case. *See id*. To streamline individual claims and mitigate expenses, litigants pursuing claims individually can rely on nonmutual offensive issue preclusion to the extent common issues exist, *see Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197–98 (10th Cir. 2000), and stipulate to the admissibility of shared evidence.

The Court finds that statutory factors caution against certifying this case as a class action. On one hand, there is no indication that class members have any interest in individually controlling the prosecution of separate actions. *See* Fed. R. Civ. P. 23 (b)(3)(A). The Court is also unaware of any litigation concerning this controversy having already begun. *See* Fed. R. Civ. P. 23 (b)(3)(B). And it may be desirable to concentrate these claims in a single forum. *See* Fed. R. Civ. P. 23 (b)(3)(C). On the other hand, because individual factual issues predominate over issues common to the class, it is likely that managing the case as a class action will be difficult. *See* Fed. R. Civ. P. 23 (b)(3)(D).

## CONCLUSION

Accordingly, Plaintiff's motion for class certification, Doc. 37, is **DENIED**. Defendant's motion to strike, Doc. 46, is **DENIED** as moot.

**SO ORDERED**.

\_\_\_/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE